UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
CAMBRIDGE MANAGEMENT :
GROUP, LLC., :
:
    Plaintiff, : Civil Action No. 05-3402 (JAP)
:
        v. : **OPINION**
:
ROBERT A. KOSSEFF & ASSOCIATES, :
P.C., *et al.*, :
:
    Defendants. :
_____:

    Currently before the Court is Plaintiff Cambridge Management Group, LLC's ("Cambridge" or "Plaintiff") motion for summary judgment.[1] The motion is unopposed. Defendants' failure to respond to Plaintiff's motion, however, does not automatically entitle Plaintiff to summary judgment on its claims. Rather, where the non-moving party fails to respond, the Court may enter summary judgment in favor of the moving party only if the moving party has established that summary judgment is appropriate. *See Anchorage Assoc. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990); Fed. R. Civ. P. 56(e) ("If the adverse party does not . . . respond, summary judgment, if appropriate, shall be entered against the adverse party."). Accordingly, the Court has reviewed Plaintiff's claims in order to determine whether Plaintiff is entitled to judgment on those claims as a matter of law. For the reasons set forth below, Plaintiff's motion for summary judgment is granted as to Counts I and II of the

---

[1] Plaintiff seeks summary judgment with respect to the each of the claims in the complaint on the issue of liability, and, in the event the Court grants its motion, Plaintiff requests that a proof hearing be held on the issue of damages.

complaint.

**I.  Background**

The Court finds that the following facts are supported by the evidence of record and are undisputed:[2]

Cambridge is engaged in the business of advancing funds to plaintiffs and attorneys involved in personal injury and similar litigation.  When Cambridge makes these advances of funds, it "purchases" a portion of the proceeds of the litigation – in this case all disbursements and 50% of the attorneys fees recovered -- which are to be paid to Cambridge only in the event of a successful settlement or verdict.  With respect to a plaintiff who has been advanced funds by Cambridge, if there is no recovery in the litigation, then no money is owed to Cambridge.  With an attorney who is advanced funds, if there is no recovery in a case that has been pledged to Cambridge, then the attorney agrees to pledge additional cases to Cambridge.

On or about November 5, 2002, Cambridge and The Law Offices of Robert A. Kosseff & Associates, PC, and Robert Kosseff, Esq. (collectively referred to herein as "Kosseff") entered into an agreement titled "AGREEMENT AS TO PURCHASE OF PART OF THE PROCEEDS DUE ATTORNEY FROM THE SUCCESSFUL RESOLUTION OF VARIOUS LITIGATIONS, AND SECURITY AGREEMENT AS TO ASSIGNMENT OF ATTORNEY'S LIEN, AND AGREEMENT TO ASSIGN ATTORNEY'S FEES, ETC., PAYABLE FROM RECOVERIES IN VARIOUS LITIGATIONS."  Pursuant to this agreement, *inter alia*, Cambridge agreed to advance Kosseff the sum of $25,000 "to cover litigation expenses and related overhead for"

---

[2]These facts are derived from the Affidavit of Gregory Wilder and the Certification of Raul Sloezen and the respective exhibits attached to each.

certain litigation matters. In exchange, Kosseff agreed that, in the event there was a recovery from these litigation matters, Cambridge was entitled to a percentage of the attorney's fees and costs recovered. Robert Kosseff "was the personal guarantor of the cash advances made by Plaintiff." *See* Plaintiff's Interrogatory No. 7 and Defendants' response thereto.

The parties entered into a similar agreement dated December 5, 2002 (the "December Agreement"), the terms of which superseded the November 5, 2002 agreement. Pursuant to the December Agreement, Cambridge advanced Kosseff an additional $75,000, for a total of $100,000. Repayment to Cambridge would be made in the event there was a recovery in certain specified litigation matters (the "Litigations"). According to the agreement, the repayment amount varied by the date repayment was made. For example, if payment in full had been received prior to May 5, 2003, then the amount due to Cambridge was $150,000. If payment had been received after May 5, 2003 but before November 4, 2003, then the amount due to Cambridge was $179,380.50. The contract sets forth various dates and amounts, and provides that if payment in full was made anytime after May 4, 2005, the total amount to be repaid was $577,199.15.

The parties subsequently entered into a similar agreement dated March 5, 2003 (the "March Agreement," collectively with the December Agreement, the "Agreements") pursuant to which Cambridge advanced Kosseff an additional $50,000, which was wired into Kosseff's attorney trust account. Repayment was to be made in the event there was any recovery in the Litigations, which remained the same as those specified in the December Agreement. The terms of the March Agreement did not supersede but were in addition to the terms of the December Agreement.

Like the December Agreement, the March Agreement[3] provided for a repayment amount that varied depending upon the date repayment was made. If repayment was made after September 5, 2005, the March Agreement provided that the amount to be repaid to Cambridge by Kosseff was $288,599.58. However, like the December Agreement, this amount would be reduced if payment in full was made by various dates set forth in the agreement.

With respect to repayment, the Agreements provided that when there was a recovery in one or more of the Litigations, Kosseff was "obligated to repay to [Cambridge], out of the Attorney's Portion of the Recoveries . . . the sum of the disbursements plus Fifty (50%) Percent of the Attorney's Portion per Litigation . . .." Agreements at ¶ 4(a). Payment was to be made to Cambridge within seven days from the date the recovered funds became available to Kosseff. Kosseff was to continue making payments as recoveries were received until the repayment terms of the contract were fulfilled. Under the Agreements, Kosseff was a trustee and escrow agent of Cambridge with respect to holding, applying and paying to Cambridge the appropriate portion of the fees recovered in the Litigations.

The Agreements provided that Kosseff would not give anyone else an interest in the attorney's fees portion of the recovery from any of the Litigations. However, Kosseff admits that in October of 2003 the proceeds of some of Litigations were pledged to an entity called "Counsel Financial Services." Presumably, Counsel Financial Services is in a business similar to that of Cambridge and had also advanced Kosseff funds.

The Agreements also required that Kosseff provide to Cambridge a written status report on each litigation matter every thirty days. Agreements at ¶ 1(k). However, Kosseff provided

---

[3]The Agreements are attached as Exhibit B and C to the Affidavit of Gregory Wilder.

only 2 or 3 status reports over a two and one half year period prior to the filing of the complaint. Additionally, Kosseff agreed to apply for and maintain a life insurance policy in the amount of $500,000, and name Cambridge as beneficiary. Agreements at ¶ 1(n). While it appears that Kosseff may have obtained such a policy, he failed to maintain it.

Under the December Agreement, in the event that Kosseff had not satisfied his repayment obligations by May 5, 2003, Kosseff was provide to Cambridge ten additional litigation matters as collateral. For each six month period after the obligation continued unsatisfied, six additional cases were to be pledged. A similar provision was contained in the March Agreement, except the date by which the obligations under that agreement were to be satisfied was September 5, 2003. Because Kosseff did not satisfy his obligations within these time frames, Kosseff pledged five additional collateral on September 15, 2003. No other cases were ever provided.

Paragraph 10 of the Agreements provided that an "event of default" occurred if, among other things, Kosseff "fail[ed] to observe and timely perform any covenants, conditions or agreements required to be observed or performed by Kosseff." The Agreement contained a liquidated damages provision pursuant to which, "in the event that [Kosseff] fails and refuses to comply with the requirements of this Agreement, i.e., pay [Cambridge] within the time requirements . . . or timely provide updates regarding the files that constitute the collateral," Kosseff agreed to pay Cambridge $10,000 for "each and every violation" of the Agreements.

Certain of the Litigations ultimately settled, and Kosseff made three payments to Cambridge under the Agreements that totaled $73,770.83. It appears that these payments were based on recoveries obtained in six separate Litigations. No other payments have been made by Kosseff to Cambridge, although, as set forth below, Kosseff obtained recoveries in additional

Litigations.

In early 2005, Gregory Wilder, Executive Vice President and Chief Operating Officer of Cambridge, and Cambridge's counsel went to Kosseff's offices in Philadelphia to review some of the files of the Litigations.  As a result of this review, Cambridge was able to determine that additional cases had settled and Cambridge had not received its payment with respect to those cases.  In a letter to Cambridge dated January 20, 2005, Kosseff confirmed that fourteen of the cases that had been pledged as collateral had settled.  Based upon the documentation provided by Cambridge in support of its motion, it is reasonable to infer that Kosseff received payments of fees and costs with respect to these settled litigations.  Moreover, Kosseff admits in answers to interrogatories that there were several cases for which it had not paid Plaintiff despite obtaining a recovery.  Consequently, there are a number of cases for which Cambridge was entitled to payment from Kosseff under the Agreements but did not receive payment.

**II.  Legal Analysis**

Plaintiff's complaint contains three counts: breach of contract, conversion, and breach of the covenant of good faith and fair dealing.  The Court finds, based on the undisputed facts as set forth above that "there is no genuine issue as to any material fact" with respect to Cambridge's breach of contract claim; and, therefore, "the moving party is entitled to judgment as a matter of law" on the claim.  *See* Federal Rule of Civil Procedure 56.  Kosseff (1) failed to pay Cambridge as agreed; (2) failed to provide written status reports as frequently as agreed; (3) did not maintain a life insurance policy as required; and (4) assigned and paid proceeds from cases pledged to Cambridge to another entity, thereby breaching the terms of the Agreements.  Consequently, summary judgment shall be entered as to Cambridge on Count I.

As to the second count, "[c]onversion consists of the wrongful exercise of dominion and control over property owned by another inconsistent with the owners' rights. *800 Port-O-San Corp. v. Teamsters Local Union No. 863 Welfare & Pension Funds*, 833 A.2d 633, 639 (N.J. Super. App. Div. 2003) (quoting *Commercial Ins. Co. of Newark v. Apgar*, 267 A.2d 559, 562 (N.J. Super. Law Div.1970)). Notably, the property allegedly converted "must have belonged to the injured party." *Commercial Ins. Co. of Newark*, 267 A.2d at 562. When money, as opposed to tangible property, is the subject of a conversion claim, New Jersey courts require that a plaintiff show something more than a contractual obligation on the part of a defendant to pay the plaintiff to establish conversion. *Advanced Enterprises Recycling, Inc. v. Bercaw*, 869 A.2d 468, 472 (N.J. Super. App. Div.2005). ("An action for conversion will not lie in the context of a mere debt...."). The plaintiff must show that the money in question was identifiably the plaintiff's property or that the defendant was obligated to segregate such money for the plaintiff's benefit. *See Communications Programming, Inc. v. Summit Manufacturing, Inc.*, No. 98-253, 1998 WL 329265, at *5 (D.N.J. June 16, 1998) (holding that plaintiff did not establish a claim for conversion of commissions due under a contract because he failed to show that the money converted belonged to him); *Hirsch v. Phily*, 73 A.2d 173, 176-77 (N.J.1950) (holding that plaintiff set forth a prima facie case of conversion of its money where defendant diverted proceeds from accounts receivable which were specifically assigned to plaintiff for its own use); *Glenfeld Financial Corp. v. Penick Corp.*, 647 A.2d 852, 861 (N.J. Super. Ct. App. Div. 1994) (finding that defendant converted plaintiff's property by "diverting payments from customers which it had agreed to place in a blocked account for [plaintiff's] benefit into [defendant's] operating accounts"); *Commercial Ins. Company of Newark v. Apgar*, 267 A.2d 559, 564-65

(N.J. Super. Ct. Law Div. 1970) (finding that defendant was not liable for conversion of insurance premiums due plaintiff because defendant was under no obligation to place premiums in trust for plaintiff's benefit).

Cambridge argues that it is entitled to summary judgment on its conversion claim because Kosseff wrongly converted funds belonging to Cambridge "by paying that money to [Counsel Financial Services]." Pl. Brf. at 31. In Kosseff's supplemental answers to Plaintiff's interrogatories, *see* Ex. S to Sloezen Cert., Kosseff lists ten settled litigations that were pledged to Cambridge and for which Kosseff received a fee. Kosseff admits that in two of these cases half of the fees received were paid to Counsel Financial Services. Kosseff, however, did not pay Cambridge the amounts owed to it for those cases. Plaintiff argues that, consequently, Kosseff converted funds belonging to Plaintiff.

Cambridge bases its argument on the provision in the Agreements that stating that upon receipt of the proceeds of any recovery, Kosseff was to "hold said payment in safekeeping as the agent and fiduciary of [Cambridge]." Also, the Agreements provide that upon receipt of the proceeds of any recovery in the pledged litigations, Kosseff was to deposit such funds into his attorney trust account or a separate escrow account and "become a trustee for and escrow agent of [Cambridge] with regard to holding, applying and paying over" Cambridge's share of the attorney's fees recovered. Agreements § 3a. As such, Plaintiff argues that upon Kosseff's receipt of such funds, a trust was formed for the benefit of Cambridge, and by paying money to Counsel Financial Services, Kosseff wrongly converted those funds. The Court agrees that such funds were to be segregated for the benefit of Cambridge, and shall enter summary judgment in favor of Plaintiff on Count II.

Plaintiff argues it is also entitled to summary judgment on Count III, breach of the covenant of good faith and fair dealing. Under New Jersey law, all contracts carry an implied term that the parties to the contract will act in good faith. *See*, *e.g.*, *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. 1997). As noted by the court in *Barows v. Chase Manhattan Mortg. Corp.*,

> New Jersey case law has recognized the potential for such an independent cause of action based upon the covenant of good faith and fair dealing in three situations: (1) to allow the inclusion of additional terms and conditions not expressly set forth in the contract, but consistent with the parties' contractual expectations; (2) to allow redress for a contracting party's bad-faith performance of an agreement, when it is a pretext for the exercise of a contractual right to terminate, even where the defendant has not breached any express term; and (3) to rectify a party's unfair exercise of discretion regarding its contract performance.

465 F. Supp. 2d 347, 365 (D.N.J. 2006) (citing *Seidenberg v. Summit Bank*, 791 A.2d 1068, 1077 (2002)). Plaintiff does not assert that any of these situations exist in the instant case, but rather bases its claim in Count III on the same conduct which constitutes its breach of contract claim in Count I. As such, the Court finds Count III to be duplicative of Count I. Moreover, Plaintiff bears the burden of "demonstrating bad motive in order to assert successfully a claim of breach of the implied covenant of good faith and fair dealing." *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1129 (N.J. 2001). Here, Plaintiff offers no evidence of motive in support of its motion. As such, the Court shall dismiss Count III as redundant.

### III.  Motion to Amend Complaint

Although Plaintiff has captioned his motion as one for "Summary Judgment Pursuant to Fed. R. Civ. P. 56," listed in Plaintiff's Notice of Motion among the various relief sought by Plaintiff by way of its motion is a request to "[p]ermit [Cambridge] to amend the Complaint to

add additional causes of action and additional Defendants." However, Plaintiff has not addressed the issue at all in its brief. Rather, the issue is touched upon in four short paragraphs in the Affidavit of Gregory Wilder. *See* Wilder Aff. at ¶¶ 56-59. Mr. Wilder states that Cambridge "gave money" to certain clients of Kosseff and that "Kosseff may have settled these cases and either paid money to the clients without paying [Cambridge] or Kosseff took money from the clients, represented to the client that he was going to pay [Cambridge] and took the money." *Id.* at ¶¶ 56, 58. Mr. Wilder further states that "[w]hatever are the facts, it is requested that after the Court has decided the motion for summary judgment, [Cambridge] be permitted to amend the complaint to include additional Defendants [namely, Kosseff's clients to whom Cambridge "gave money"] and additional causes of action against the Kosseff Defendants. Significantly, Plaintiff does not specify what additional causes of action it seeks to add to the complaint in this matter.

Amendments to pleadings are governed by Federal Rule of Civil Procedure 15(a)m which provides that leave to amend "shall be freely given when justice so requires." In *Foman v. Davis*, 372 U.S. 178, 182 (1962), the Supreme Court articulated the liberal policy of allowing amendments underlying Rule 15(a) as follows:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or undeclared reasons-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be "freely given."

In the present case, however, Plaintiff has provided the Court with such little information about the proposed amendment to its complaint, the Court cannot perform the appropriate

analysis.[4] The Plaintiff having failed to appropriately support its motion, the motion must be denied.

**IV. Conclusion**

For the reasons stated above, Plaintiff's motion for summary judgment is granted as to Counts I and II of the complaint. Count III is dismissed as being duplicative of Count I. Plaintiff is instructed to submit, on notice to defendants, affidavits in support of its claim for damages. Plaintiff's motion to amend the complaint is denied. An appropriate Order accompanies this Opinion.

Dated: July 18, 2007

                                                   /s/ JOEL A. PISANO
                                                 United States District Judge

---

[4] It does appear, however, based on the very few facts that Plaintiff has provided, that the factual basis supporting the proposed amendments is entirely separate and distinct from the Agreements at issue in the present matter. As such, it would appear Cambridge could bring a separate action with respect to those new claims/defendants.